**06 -CV- 0357** DNH / RFT

From May 24th, 2004, Bank of America employed me until February 6th, 2006. In

this time, I held two positions, such as Mail Sorter and Computer Operational Technician.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

On August 15th, 2005, I made a complaint to the Equal Employment Opportunity

Commission about being discriminated against at Bank of America. On February 6th MAR 2 1 2006

2006, I felt that the management of Bank of America had retaliated and terminated my LAWRENCE K. BAERMAN, CLERK
ALBANY

employment. In the investigation, the EEOC concluded that there was no violation. It is

hard to understand how the EEOC can overlook evidence that so strongly prove my case.

I strongly disagree with their decision, and I would like to file a case in Federal District

Court.


In December 2004, I received a good performance review by then manager

Shawn Sprague who told me not only did I meet expectations, but that he was happy with

the way I was learning.  In February, 2005, I submitted an application for a position as a

System Analyst in the User Testing Department, and so informed my new manager

Michael Panzera, and Shawn Sprague. Shortly after I applied for this new position, in

mid-February, and on subsequent occasions, I received warnings by the Data Center

management claiming technical errors and inappropriate behaviors.  I dispute these

allegations as they are discriminatory and false, reflect a time discrepancy, and for other

such reasons.


Your honor, during my interview with Mr. Shawn Sprague in August 2004, he

told me that it would take six to eight months to be comfortable in the Data Center as a

Computer Operational Tech, and that management expects mistakes during this time

period.  As the warnings occurred during this time period, I was not afforded said treatment as a trainee, thereby making the claims against me was improper. These were first-time errors that were easily corrected, and not repeated.  These mistakes should have been considered as part of my learning curve.

In addition, on February 15th, 2005, the day that Michael Panzera indicated I received my first verbal warning; I was not told that it was a verbal warning.  I was told that it was a coaching situation.

Furthermore, on February 22nd, 2005, a few days after I remedied an ACH file testing situation, Mr. Panzera told me he was going to write me up for missing a deliverable transfer deadline.  I explained that it was not a live, deliverable transfer, but only a test.  I received a verbal warning even though this was the first such occurrence.

Also, on April 11th, 2005 I was written up by Mr. Panzera for missing an e-mail to the Encoding Department although it was my first such mistake, and the same mistake performed by others at various times who did not receive a write-up. This happened the day before I was interviewed for the System Analyst position in the User Testing Department. On April 7th, 2005, Mr. Panzer and Mr. Sprague told me that they would deliver the written warning on April 11th, 2005.  On April 8th, 2005, two managers name John Chick and Linda Maybe interviewed me from the user testing department. Both were pleased with my interview and asked me to meet with the head of the department Helmine McHale on April 13th, 2005. When I returned to the User Testing Department

for the second interview, however, I not only was refused the interview, but I was not even admitted through the door.

On August 2, 2005, I was called into a meeting with my manger, Michael Panzera, and Bruce Hopkin. There I was informed that I was being written up, and that it was the last step before termination. When I inquired about the reason for the write up, Mr. Panzera read from a form indicating that I demonstrated abusive, threatening, and unprofessional behaviors on June 6, 2005, causing a coworker to feel uncomfortable. Not only are these claims false, but they are alleged to have happened on June 6th, a day that I was, in fact, out of work, having been out under doctor's notice from April 20th to July 31st.

The Bank of America has stated on the first write up that, "Electronic and paper deliverables being sent to our internal and external customers incorrectly on 04/07/05, 04/06/2005, 04/05/2005." I believe this claim is false.

Your honor, please note that, on April 7th, 2005, the day before my job interview, I was told by Mr. Sprague, and Mr. Panzera that management would write me up on Monday April 11th, 2005. I was very upset with their decision since my job interview was pending, so I left work around 5:30pm. The way a Real Estate processing schedule is written, we have to finish the first job before we get to the next one, because every batch job depends on the next job. Usually we send the e-mail to DOF proximately 11:00pm. Obviously I was not at work to send e-mail. ***Exhibit 1*** includes a copy of the employee

time balance sheet, which indicates that I left work after two hours of my shift.

Your honor, please note that, the other two dates 04/06/2005, 04/05/2005 cannot be verified since the employer has deleted my e-mail accounts. ***Exhibit 2*** includes the printouts that proves that my e-mail account was deleted when I returned to work on August 1st, 2005. If the management had not deleted my account, then these dates could have been verified easily, since I used to archive all of my outgoing e-mails. Also the printout demonstrates that my name is not in the Data Center employee e-mail distribution list and outlook e-mail address book.

The Bank of America has stated on the first write up on February 22nd 2005 that "On occasion internal paper reports need to be generated and redistributed the following morning." There, hundreds of reports get generated, sorted, and distributed every second shift. It is impossible for anyone to be able to generate, sort, and distribute reports without any mistakes occurring. ***Exhibit 3*** includes that the other employees in the Data Center have made similar mistakes on a regular basis and have never been written up before. This happened after I came back from Short Term Disability (STD) leave and coworker Rummy and Cristal were assigned to work on FAIM (New York City Tax) project that I used to do.

The Bank of America has stated on the first write up that, "Deposit system 'End of Day" processes completed incorrectly on the following days: 04/07/05, 03/31/05, 03/30/05, 02/22/05, 02/21/05, 02/14/05, 01/18/05, and 01/14/05." I believe this claim is

false.

Your honor, please note that on April 7th, 2005 I was told that I was going to be written up. I was very upset seeing as my job interview was pending with the User Testing Department. I left early that day. I was not there to complete the end of the day process which we ran after 10:00pm at night. How can I run the process when I am not there? ***Exhibit 4*** indicates that the team leader Mr. Karl ran the end of the day processes that day. Every job we ran we have to initial, and write down the start and stop time.

Your honor, please note that on March 31st , 2005, seven jobs of the end of the day process were run by the team lead Karl, four jobs were run by me, and one job was run by team leader, John Mcgrew. End of the day process started at 22:00pm and stopped at 22:18pm. ***Exhibit 5*** shows that the entire process was run successfully.

Your honor, please note that on March 30th, 2005, I wrote on the processing schedule with a red pen that we had a system problem when running the end of day process. Upon discovering the system error I paged Mr. Panzera. I was not responsible for the system error. Therefore, it may be a problem, but that was not my fault. ***Exhibit 6*** demonstrates the processing schedule for that day. It shows that ten jobs were run by team lead Karl and only three jobs were run by me. Despite the one problem, the rest of the process ran smoothly.

Your honor, please note that on February 22nd, 2005, team leader, Mr. Mcgrew,

was supposed to watch the backups and time out when WAUSAU backup was competed. It was then his duty to start the 'end of the day' process, but the process was never set into motion. I started the WAUSAU backup at 18:59 (6:59pm) and initialed it. Then team lead John Mcgrew recorded the end time at 22:21 (10:21pm). I was not at work after four hours of my shift. The reason is that on February 22nd 2005 my manager Mr. Panzera and second line manger Mr. Sprague had delivered the verbal warning. I was very upset with their unethical decision and told them that I would not be able to concentrate on my work and like to go home. The next day my doctor, Marc Hirch told me to stay out of work for two days from February 23rd 2005, to February 25th 2005. ***Exhibit 7*** includes the copy of the process schedule, which shows that I had started the four backups such as, nycurb, ssdaily, nycprdb and WAUSUA back. The team leader Mr. Mcgrew had recorded the end time for those backups. I have also included the copy of Dr. Hirch's note for demonstration.

Note your honor that on February 21st, 2005, the bank was closed. ***Exhibit 8*** demonstrates the printout that shows that it was Presidents' Day. And yet, Bank of America claims that processes were run incorrectly on this day.

Your honor, please note that on February 14, 2005, co-worker Mr. Simon and team leader Mr. Karl were responsible for running the process that night. I spent the end of the shift sorting reports in the printer room. ***Exhibit 9*** includes the copy of the processing schedule. This schedule shows that the end of the day process was not started by any employee.

Note your honor as to January 18, 2005, team leader Mr. Karl and Mr. Simon, ran the entire process. I was not even involved with the process that night. ***Exhibit 10*** Indicates the copy of the processing schedule.

On January 14, 2005, Mr. Simon and Mr. Karl ran the entire process. I was recently introduced to the 'end of the day' process, and I had only run two jobs. ***Exhibit 11*** Demonstrates the copy of the processing schedule.

The Bank of America have stated on the first write up that "Items being signed off on the processing schedule that have not been completed or completed incorrectly: 02/17/05, /04/06/05. On 2/17 there was a complete section off the Parking Processing Schedule that was left blank and items not processed during your shift. This is in reference to your 02/22/2005 first step formal verbal coaching session. On 04/06/2005 it was signed off on the Processing Schedule to send a NYC16, NYC17, and NYC18 reports to the customer. Instead NYC16, NYC17, and NYC19 was sent." I believe this claim is false.

Your honor, please note that on February 17th, 2005, the parking procedure was not live. We ran the job for testing the software. That day I ran all of the important processes for Business and Exile, and Real Estate till 17:15 (5:15pm), and spent most of my time working on the jobs, which contains important deliverables. At the end of the shift Mr. Karl had informed me that I needed to finish the parking procedure, so I

completed the rest of the process until 23:35 (11:35pm). *__Exhibit 12__* Indicates the copy of

the Parking procedure. Showing the start and end time for the jobs. Also I had completed

one training class and began one class that night.

Your honor, please note that on April 6th, 2005, I was supposed to send NYC16,

NYC17, and NYC18 reports to the encoding department. By mistake I had sent NYC19

report instead of NYC18, so only one report was missing. That was the first time that I

sent the one wrong report. My managers Mr. Sprague and Mr. Panzera told me, on April

7th, 2005, the day before my job interview that they were going to deliver a write up. On

April 11, 2005, they wrote me up. Your honor, please note that on the write up top left

side the date is written is April 8th 2005. The same day I had the job interview. *__Exhibit__

__13__* indicates the copy of the write up. Also I have included the copy of printouts which

show that the management deleted my e-mail account and issued a new account on

September 20th 2005, so if EEOC or Federal District Court were to verify my mistake

they would not be able to do so, on * *__Exhibit 2__* above.

Your honor, please note that on April 20th, 2005, I left for the hospital in the

middle of my shift because of a pain in my stomach. Dr. Camp diagnosed that my

medical condition has been exacerbated at the work place and suggested to stay off of

work for two months. On June 22, 2005 I visited Dr. Kamp and he extended my leave till

July 31, 2005. *__Exhibit 14__* includes three medical notes that my doctors gave me on their

appointments.

Your honor, please note that on August 1st, 2005, my doctor allowed me to go

back to work for four hours a day. I returned to work on August 1st, 2005, and my

manger Mr. Panzera told me that he and third line manager, Mr. Hopkins, would like to

see me the next day August 2, 2005 at 3:00pm. When I came to the meeting, Mr. Panzera

brought me to his office while Mr. Hopkins was already present there. We greeted one

another and then Mr. Hopkins told me that we were there for the third counseling. I asked

him for what reason, since I was out on the medical leave for three months. Mr. Panzera

started reading of the page of the write up that on June 6th I physically and verbally

threatened Mr. Karl and exhibited an unprofessional behavior. When he said that, I asked

him to confirm which day that was and he replied on June 6th, 2005. I took the page out

of his hand and left the room to make the copy of the write up. Next door down we have

copy machine room. When I swiped my card to enter into the copy machine room, it did

not work. Mr. Panzera and Mr. Hopkins were seems to be very nervous and they

followed me. I asked Mr. Panzera if he could swipe his card, which he did and I made a

copy of the write up. I gave their copy back to them and told them that I was not present

at work on June 6th 2005. We returned back to Mr. Panzera's office and he began looking

for the date and could not find any. Then Mr. Hopkins said that it was a typing error and

that they would find the date. While I left the room to make a copy of the write up, Mr.

Hopkins called the security guard, Ron. Now four people were in Mr. Panzera's office.

When they were finished talking to me they told me that I needed to sign the write up. I

refused to sign and told them that I was not feeling well and would like to go home. They

told me that I could go home, but if I told anybody anything I would lose my job. I chose

to go home and next day I met with my doctor. My doctor told me that I should take off

from work until September 9th, 2005. ***Exhibit 15*** includes the copy of the write up and the

doctor's note. I am also attaching copy of my co-worker Raymon Maldonado comments

about me. There is another co-worker named Ron Newsom who refused to give me his

comments in writing, but said would speak the truth. He said he has never seen me

conducting unprofessional behavior against Karl. I have also spoken to Mr. Karl about

this, and asked him if I had ever threatened him or conducted my self in an

unprofessional manner? His comments were that he was surprise to know what

management is doing to me.

On August 15th, 2005, I sent a complaint to the Equal Employment Opportunity

Commission with the Russell Schindler law firm. On October 17th, 2005, EECO received

a position statement from the Bank of America. In the position statement the Bank of

America gave untrue information to EEOC seven different times. ***Exhibit 16*** includes the

Respondent Position Statement.

The first incorrect statement was, "Bank of America has hired on May 24, 2004.

His current job title is Computer Operations Technician." I did not start as a Computer

Operational Technician till September 1, 2005. I was working as Mail Sorter from May

24, 2005 to then end of the August. ***Exhibit 17*** Demonstrates the job offer letter that

human resources office gave me when they offered me a job.

The second time the Bank of America was incorrect it was in stating, "Upon

receiving this written counseling he requested a medical leave of absence and/or Short

Term Disability (STD) effective April 20, 2005. Note: Due to the fact that Mr. Khan did not meet the federal eligibility requirements for FMLA nor did he meet the one year eligibility for STD his FMLA status and STD was denied. However his request for a medical leave of absence was approved. Once Mr. Khan reached his one year milestone a May 23, 2005, his STD benefits and FMLA were approved." However, this is untrue since the Bank of America has not paid me the medical benefits, which they would normally pay to the native employees. The only money I got was state short term disability which was not enough to buy medical drugs which my doctor had prescribed. There are two checks that they paid me by mistake which they are claiming that I need to pay back. **_Exhibit 18_** indicates copy of all the mails I have received from Met Life, and the bank statement that showed that I did not received the pay check while I was on disability from the Bank of America.

The third statement I do not agree with is, "When he returned to work on August 1st, 2005 his manager, Michael Panzera and Senior Manager, Bruce Hopkins met with his to discuss an incident that happened on the evening of April 18th and/or the morning or April 19th, 2005. During this incident Mr. Khan had become confrontational with another associate. During the meeting with Mr. Panzera and Mr. Hopkins Mr. Khan became extremely agitated to the point that Mr. Hopkin called for Security to join the written counseling due to his confrontational behavior." And also "Note: this document is dated June 6, 2005 written counseling along with Mr. Khan was originally scheduled to return to work on that date, not because that was the date of the incident as Mr. Khan alleges." My doctor approved me for short term disability from April 20th, 2005 to July

31st 2005; there was no reason for the Bank of America to expect me to return on June 6th, 2005. Also on suggestion by my mother, she was worried about my serious health condition, I decided to go to Saudia Arabia in Mekkah to the house of Allah (God), and so I could pray to Allah (God) for my health. I left the United States on May 15th, 2005, and came back on June 9th, 2005. ***Exhibit 19*** demonstrates the doctor's notes and copy of the ticket that shows the travel time and date. Also there is the copy of doctor note that I had received in the emergency visit in the hospital in Mekkah, Saudia Aribia.

The fourth statement I find false is: "Once he was placed on written counseling he again requested and was approved for a second medical leave and STD benefits effective August 3, 2005. He return to work affective September 9th, 2005" Again the Bank of America did not pay me full wages as described in Bank of America STD coverage guideline. * ***Exhibits 18*** indicate all the mail I have received from Met Life about their continuous refusal to my paid medical benefits. Also two mails from the Bank showing that my medical coverage started on the January 1st 2005 and end on April 30th 2005 and I do not have any medical coverage.

The fifth untrue statement is: "Additionally, Mr. Khan has requested and was approved for two medical leaves of absences that he took within days of each other. It is important to note that he had exhausted his STD benefits yet he was still approved for both leaves of absences and was afforded job protection." Every time an employee takes leave, we have to fill out an absence sheet form. Your honor, please ask them for a copy of two consecutive days of absence sheets from in between Sep 9, 2005 to October 27,

2005.

The sixth untrue statement is: "It is unclear why Mr. Khan believes that he was counseled as a result of his posting for another position. Mr. Khan has been told that he can indeed post for other positions even though Bank policy dictates that once an associate is on any formal written counseling they are not allowed to transfer to another position within the Bank." My response to this statement is that, if everything the Bank of America legal department is saying is true, then how can they justify the first step verbal warning, second step first written warning, and third step second written warning. The Bank managers have claimed I have made mistakes in running the systems processes and conducted an unprofessional behavior, on the dates that the Bank was closed or I was out on sick leave. My doctor has indicated to the Bank "His medical condition is exacerbated by stress. If changing position or departments reduces stress, then I would support this decision." My doctor is clearly suggesting to the Bank of America management that their manager's behavior is causing me harm and suffering, so they should put me in different department. However, Bank of America management did nothing to correct the manager's behavior towards me nor proceeded to switch me to different department.

The final questionable statement issued by Bank of America is that, "Exhibit 5 includes a copy of the August 2 written counseling along with Mr. Khan's comments." They did not even attach the second page of my comments in their position statement. That is another lie, since I did write an appeal to Mr. Hopkins and Human Resources

when I was written up in April, and since I was not in agreement with their write up.
*Exhibit 20* demonstrates the copy of both pages that I have had wrote in my appeal.

Dr. Kamp allowed me to go back to work on September 9th 2005. Upon my return, I think management and trainers used all of their energy to build their case against me. Since I had made complaint to EEOC for discrimination, everything I was doing was unacceptable to them. Everyday I came to work they tried to some kind of issue with me. this made my medical condition worse and I was constantly in stomach pain. Then Dr. Kamp suggested to me to stay out of work from October 28th, 2005 to January 12th, 2005, but allowed me to work my part-time job, so I could make some money working part-time. The entire time I was on STD leave the bank had not paid me any medical benefits. *Exhibit 21* indicates the doctor notes, and my notes about how managers and trainers gave me hard time.

On April 7th 2005, my manager's Mr. Sprague and Mr. Panzera gave me the written warning; I left work after two hours. Mr. Panzera then had to run the entire FAIM (New York City Tax) projects, such as Real Estate and Business and Exile. There is one job that we run every 7th of the month in Real Estate project. By running this job we create reports and files for DOF (Department of Finance). This job is very important. Mr. Panzera did not run Ret_MonthlyUnload.sh -3 job on April 7th 2005. Also Mr. Panzera and Mr. Sprauge had made more then ten mistakes on the verbal and written warning they had given me. *Exhibit 22* demonstrates on the second page that Mr. Panzera did not run the Ret_Monathly_Unload.sh -3 job on April 7th 2005. Furthermore, On March 7th,

2005, I had run Ret_Monathly_Unload.sh -3 job, and on October 7th 2004, Mr Simon ran Ret_Monathly_Unload.sh -3 job.

EEOC have stated in their conclusion that "Further, in the instant charge you speak of being out on short term disability which does not qualify as disability under the Americans with Disability Act [ADA]. Again, no impairment/disability is named or shown to be long term and permanent." My response to this statement is that my fellow co-workers Ms. Nicole and Mr. Simon had gone out on STD leave for six month and two months, respectively. However, they both got paid the full medical coverage and got paid on time. In my case there were two pay checks that the Bank of America paid me. They are claiming that it was overpayment and that I need to pay that money back. ***Exhibit 23*** includes the copy of the Bank of America letter, which billed me for the amount of $3,045.05

The investigator from EEOC, Mr. Peter Holland gave me the deadline, November 7th, 2005, to submit the facts for my case. The EEOC told me that I needed to provide them with details, point by point written rebuttals to the Respondent Statements. That week I spent lot of time in the Russell Schindler Law Firm, while even Mr. Schindler was on appointments with his other clients; to sort my paperwork since all the proofs I have are technical. I wanted to help him as much as possible to understand my evidence, so it would be easy for the EEOC to understand the material. However, I also made appointment with Mr. Holland on November 12th, 2005; to go over all the material my lawyer has provided him. During my meeting with Peter Holland I was surprised to know

that he did not receive anything from the Russel Schindler Law Firm. Luckily, I had brought all the information with me, so I gave it to Mr. Holland. The next day I had terminated my relationship with the lawyer Russell Schindler, because of his sloppy service, which could have cost me the case.

When on August 15th, 2005, I came to Mr. Russell office for consultation. He really liked my case and filled out an EEOC complaint form with me. He asked me to sign the contract with him, which I did without knowing the law and the layers process. He did not explain me what the contract said. Since he has leaned on my case no other lawyers are willing to take my case. I am now fighting for my own rights. _**Exhibit 24**_ indicates all the necessary paper work to prove that my relationship with Mr. Schindler's law firm has been terminated.

On March 8th, 2005 I received the mail from EEOC which stated that: "Our review of the evidence in your case, including the information you provided, fails to indicate that a violation has occurred and it is not likely that additional information will result in our finding a violation." Furthermore Mr. Peter Holland states: "After a thorough reading of all of the material submitting by both parties, the Commission does not find that that the Respondent discriminated against you due to your race, religion, national origin or disability concerning the adverse write-ups are a part of supervisor's or manager's responsibilities. The respondent has documented that similarly situated, comparator employees were also written up by the mangers who wrote you up." My response to Mr. Peter Holland's investigation conclusion is that the other employees of

the Bank of America probably made genuine mistakes, or the Bank of America had made some false write ups to defend their case. In my case, the Bank of America accused me wrongly. They have not only treated me unethically, but I believe they have misled the EEOC. *Exhibit 25* demonstrates the Notice of Rights to Sue, and all the correspondence that I had received from the EEOC.

On February 6th, 2006, I felt that the management of Bank of America has retaliated and terminated my employment. I made a complaint to the EEOC about being discriminated on February 21st, 2006. The EEOC has respond to my complaint by stating that: "After a thorough reading of all of the material you have submitted, the commission finds that you have not made a case of illegal retaliation under the statues enforced by this Commission. You do not show a nexus between your prior EEOC charge, which is a protected act, and your discharge. You do not show that the official who discharged knew of your previous charge, or, that he acted on that knowledge. Without both knowledge and action on that knowledge there can be no illegal retaliation under the EEO statues. [Such a nexus may not be presumed or assumed but must be directly stated outright.]" My response to the EEOC this statement that, how can that is possible the official who discharged me does not know the previous charge? Because of him the Bank of America is facing the lawsuit. *Exhibit 26* includes my complaint to the EEOC and the right to sue letter.

These days it is very hard to find a job in Information Technology. When the bank of America hired me, I started my career with the hope that I would make the most out of

this job opportunity. I would do my best to advance my career. When the managers of the Bank of America penalized me for trying to advance my career, I brought it to the attention of every one in the management hierarchy, including the human resources department. Nobody at the Bank of America has tried to correct the manager's mistakes and give me any justice. I was supposed to get married on November 15th 2005. The way the Bank of America treated me has cost me health, money, job experience and I could not even got married on time. Dr. Rodney Kamp has said that I might have to take medication throughout my life to have bowel movement. He also suggested that "Mr. Khan has chronic medical condition that is exacerbated by a stressful work environment. His medical condition might significantly improve if he seeks employment else where." The EEOC only spent eight months investigating my case. Based on my experience with EEOC, I strongly feel that a law enforcement agency like EEOC should have investigated more thoroughly before they made a decision.


Thank You,


Atif J. Khan